**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IN RE:

| | | |
|---|---|---|
| **BONNIE SUE TYKLA,** | : | Bankruptcy No. 02-29030 BM |
| | : | |
| **Debtor** | : | Chapter 7 |

*********************************

| | | |
|---|---|---|
| **JAMES R. WALSH, ESQUIRE, TRUSTEE OF THE BANKRUPTCY ESTATE OF BONNIE SUE TYKLA,** | : : : : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | Adversary No. 04-2430 BM |
| | : | |
| **COMMONWEALTH OF PENNSYLVANIA, STATE EMPLOYMENT RETIREMENT BOARD d/b/a STATE EMPLOYEES RETIREMENT SYSTEM,** | : : : : | |
| | : | |
| **Defendant** | : | |

**and**

| | | |
|---|---|---|
| **ROBERT ALAN HAMPTON and DONNA LEE HAMPTON** | : : | Bankruptcy No. 02-31064 BM |
| | : | |
| **Debtors** | : | Chapter 7 |

*********************************

| | | |
|---|---|---|
| **JAMES R. WALSH, ESQUIRE, TRUSTEE OF THE BANKRUPTCY ESTATE OF ROBERT ALAN HAMPTON and SUE HAMPTON,** | : : : : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | Adversary No. 05-2947 BM |
| | : | |
| **COMMONWEALTH OF PENNSYLVANIA, STATE EMPLOYEES RETIREMENT BOARD d/b/a STATE EMPLOYEES RETIREMENT SYSTEM,** | : : : : | |
| | : | |
| **Defendant** | : | |

Appearances:   David J. Novak, Esq., for Plaintiff Trustee
Jill Straub, Esq. for Defendant

## **MEMORANDUM OPINION**

The chapter 7 trustee in these adversary actions seeks to compel an instrumentality of the Commonwealth of Pennsylvania to turn over the accounts of debtor Bonnie Tylka and debtor Robert Hampton in a deferred compensation plan ("DCP") that the Commonwealth has established for its officers and employees.  The chapter 7 trustee asserts that debtors' DCP accounts are included in their respective bankruptcy estates by virtue of § 541(a) of the Bankruptcy Code.  According the trustee, statutory restrictions imposed by Pennsylvania law on the transfer of debtors' interests in their DCP accounts are not enforceable under applicable non-bankruptcy law within the meaning of § 541(c)(2) of the Bankruptcy Code.

The Commonwealth insists that the statutory restrictions imposed on the transfer of debtors' interests in their DCP accounts are enforceable under Pennsylvania law and that their interests therein are excluded from their respective bankruptcy estates by virtue of § 541(c)(2).

We conclude that because the statutory restrictions imposed on the transfer of debtors' interests in their DCP accounts are enforceable under Pennsylvania law, debtors' interests in their DCP accounts are *excluded* from their respective bankruptcy estates in accordance with § 541(c)(2).  Judgments will issue in both adversary actions in favor of the Commonwealth and against the chapter 7 trustee.

– FACTS –

*Debtor Bonnie Tylka (Adversary No. 04-2430).*

Debtor Bonnie Tylka has been employed as a nurse by Pennsylvania Department of Corrections since 1982 or 1983.

She filed a voluntary chapter 7 petition on August 21, 2002. A chapter 7 trustee thereafter was appointed.

The schedules accompanying the petition listed assets with a total declared value of $54,047.08 and liabilities totaling $89,223.50. Included among the assets listed was an interest in an account debtor had in a DCP established by the Commonwealth of Pennsylvania for its officers and employees.

Debtor listed the account as having a value of $1.00 and claimed that it was excluded from her bankruptcy estate by virtue of § 541(c)(2) of the Bankruptcy Code.

Debtor received a discharge on November 25, 2002. The bankruptcy case has to date not been closed.

The chapter 7 trustee subsequently commenced an adversary action against the Commonwealth, seeking to compel it to turn over to him debtor's interest in the DCP account for distribution to her creditors. The chapter 7 trustee asserted in the complaint that debtor's interest in the DCP was property of her bankruptcy estate and that the Commonwealth therefore was obligated to turn the funds in the account over to him. Debtor was not named as a defendant in the complaint and to date has not formally objected to the trustee's prayer for relief as a necessary party in interest.

The Commonwealth and the chapter 7 trustee agree that this case can be decided on a case-stated basis and have stipulated as to the salient facts and submitted briefs in support of their respective positions. The matter is now ready for resolution.

**Debtor Robert Hampton (Adversary No. 05-2947).**

Robert Hampton also is employed by Pennsylvania Department of Corrections. The record does not indicate what his position is or how long he has been employed by Department of Corrections.

On October 9, 2002, Robert Hampton and his wife, Donna Hampton, filed a voluntary joint chapter 7 petition. The same chapter 7 trustee was appointed in this case as was appointed in the other bankruptcy case.

The schedules accompanying the petition identified assets with a total declared value of $80,890.00 and liabilities totaling $63,623.26. Included among the assets listed was an interest in an account debtor Robert Hampton had in a DCP the Commonwealth had established for its officers and employees. Debtors asserted that Robert Hampton's interest in the account had an "Unknown" value and claimed an exemption therein in an "Unknown" amount pursuant to § 522(d)(5) of the Bankruptcy Code.[1]

Shortly after debtors Robert and Donna Hampton received discharges on March 9, 2004, the chapter 7 trustee commenced an adversary action (Adversary No. 05-2947) against State Employees Retirement Board ("SERB"), an "instrumentality" of the Commonwealth of Pennsylvania, seeking to compel it to turn over to him the interest

---

[1] The chapter 7 trustee and the Commonwealth have stipulated that the value of debtor Robert Hampton's interest in his DCP account was $14,371.04 when the Hamptons commenced their bankruptcy case.

debtor Robert Hampton in his DCP account for distribution to his creditors. The chapter 7 trustee asserted that the interest of debtor Robert Hampton in his DCP account was property of his bankruptcy estate and that SERB was required to turn over the funds in the account over to him. Debtor Robert Hampton was not named in the complaint as a defendant and has filed no objection thereto.

The chapter 7 trustee and SERB agree that this adversary action also can be decided on a case-stated basis and have stipulated as to the salient facts and submitted briefs in support of their respective positions. The case is now ready for decision.

## – ANALYSIS –

As compensation for their employment, debtors Tykla and Hampton also enjoy a generous salary and fringe benefits, including a partially funded employee pension plan. The trustee makes no claim to either of the above benefits of employment. Only the DCP is at issue here.

The question to be decided in both adversary actions is whether the interests of debtor Bonnie Tylka and debtor Robert Hampton in their respective DCP accounts lie within the scope of § 541(c)(2) of the Bankruptcy Code and thus are excluded from their bankruptcy estates.

Section 541 of the Bankruptcy Code provides in pertinent part as follows:

> (a) The commencement of a case under ... this title creates an estate. Such an estate is comprised of the following property, wherever located and by whomever held:
> (1) Except as provided in subsection ... (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case....

> (c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1) .. of this section notwithstanding any provision in an agreement ... or applicable nonbankruptcy law –-
>     (A) that restricts ... transfer of such interest by the debtor....
> (2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541.

It is not disputed that debtors Bonnie Tylka and Robert Hampton had at least equitable interests in their respective DCP accounts for purposes of § 541(a)(1) when they filed their bankruptcy petitions.

To paraphrase § 541(c), such equitable interests become property of a debtor's bankruptcy estate despite any provisions contained in an agreement or in an applicable non-bankruptcy law that restricted the transfer of that interest by the debtor. 11 U.S.C. § 541(c)(1)(a). If, however, such a restriction is imposed on a debtor's beneficial interest *in a trust* and that restriction is *enforceable* under applicable *non-bankruptcy law*, the restriction is enforceable in that debtor's bankruptcy case. 11 U.S.C. § 541(c)(2). The equitable interest in that event is not included – *i.e.*, is excluded – from the debtor's bankruptcy estate and the chapter 7 trustee may not administer that interest for the benefit of the debtor's creditors. In simpler terms, the equitable interest of debtor may not be used to pay creditors who in good faith provided services or goods after debtor agreed to pay. To the contrary, debtor may enjoy the benefit of the creditors' largesse and, in addition, enjoy the DCP after all debs are discharged.

Having determined that debtors Bonnie Tylka and Robert Hampton each have at least an equitable interest in their respective DCP accounts, what remains to be determined is whether all of the requirements of § 541(c)(2) are satisfied.

Federal law, *Patterson v. Shumate*, 504 U.S. 753, 758, 112 S.Ct. 2242, 2246-47, 119 L.Ed.2d 519 (1992), as well as state law, *Velis v. Kardanis*, 949 F.2d 78, 80-81 (3d Cir. 1991), may qualify as "applicable nonbankruptcy law" for purposes of § 541(c)(2).

The United States Court of Appeals for the Third Circuit has articulated the requirements of § 541(c)(2) when a debtor's interest in an IRA is at issue. *Orr v. Yuhas (In re Yuhas)*, 104 F.3d 612, 614 (3d Cir. 1997).[2]

Modifying the requirements articulated in *Yuhas* for a debtor's interest in a DCP, we hold that the following requirements must be satisfied for § 541(c)(2) to apply to a debtor's interest in a DCP: (1) the DCP account is a trust; (2) the funds in the DCP account represent the debtor's beneficial interest in the trust; (3) the DCP account qualifies under § 457 of the Internal Revenue Code for favorable tax treatment; (4) there is a statutory (or contractual) provision that restricts the transfer of the property in the trust; and (5) the provision is enforceable under non-bankruptcy law.

Characterizing the argument of the chapter 7 trustee is difficult because he has not cast it using these requirements. As we understand his position, the chapter 7 trustee denies that requirement (5) is satisfied in these cases and, as a consequence, also denies that requirement (1) is satisfied.

---

[2] The applicable provision in *Yuhas* was a New Jersey statute. The Third Circuit subsequently employed the same requirements where the relevant provision governing the transfer of a debtor's interest in an IRA arose under Pennsylvania law. *In re Davis*, 108 Fed. Appx. 217, 219-20 (3d Cir. 2004).

There are many economic advantages to participation in a DCP, but Commonwealth employees need not participate if they choose not to.

An employee's individual DCP account is created by agreement between the employee and State Employees Retirement Board ("SERB"). The account is funded, *inter alia*, by amounts deducted from the employee's payroll.

The enabling statute authorizing establishment of DCP accounts for Commonwealth officers and employees provides that all assets and income which have been or will be withheld or deferred:

> ...[S]hall be held *in trust* in any funding vehicle permitted by section 457 of the Internal Revenue Code of 1986 for the exclusive benefit of the plan's participants and their beneficiaries until such time as the funds are distributed to the participant or his beneficiary in accordance with the agreement between the participant and the State Employees Retirement Board ... All such assets and income withheld or deferred by the Commonwealth shall be held *in trust* ... in a special fund within the State Treasury of which the State Treasurer shall be the custodian. Such deferred compensation shall exist ... in addition to and shall not be a part of any retirement or pension system for officers and employees. (Emphasis added.)

72 Pa. C.S.A. § 4521.2(h)(1). (Purdon's Supp. 2005.)

Members of SERB, who are responsible for establishing and administering a DCP for Commonwealth officers and employees and promulgating rules and regulations for its operation, "shall be the *trustees* of the deferred compensation plan established for Commonwealth officers and employees". (Emphasis added.) 72 Pa. C.S.A. § 4521.2(h)(2). (Purdon's Supp. 2005.)

The "trust" established for Commonwealth officers and employees is not a "garden-variety" trust; it is a *spendthrift* trust. The enabling statute provides as follows:

> The trust established for Commonwealth officers and employees is declared to be a *spendthrift trust*, and any construction of a participant's plan account as *self-settled* shall *not* cause the plan account to be treated as other than a spendthrift trust. [Emphasis added.)

72 Pa. C.S.A. § 4521.2(h)(3). (Purdon's Supp. 2005.)

Finally, the enabling statute imposes restrictions upon the transfer of a plan participant's beneficial interest or right to receive payments under a DCP. It provides as follows:

> Any benefit or interest available under a deferred compensation plan established under this section, or any distribution or payments made under such a plan shall *not*, except as specified by the plan, be subject to *assignment*, *alienation*, *garnishment*, *attachment*, *transfer*, *anticipation*, *sale*, *mortgage*, *pledge*, *hypothecation*, *commutation*, *execution* or *levy*, whether by voluntary or involuntary act of any interested person. (Emphasis added)

72 Pa. C.S.A. § 4521.2(h)(4). (Purdon's Supp. 2005)

According to the chapter 7 trustee, requirement (5) for § 541 (c)(2) of the Bankruptcy Code to apply is not satisfied with respect to debtors' respective DCP accounts. The restrictions imposed on the transfer of debtors Tylka and Hampton DCP accounts as set forth in § 4521.2(h)(4), in other words, are not enforceable under non-bankruptcy law, in this instance the common law of Pennsylvania.

According to the common law of Pennsylvania, a valid spendthrift trust exists when there is an express provision in the instrument creating the trust which forbids alienation of a beneficiary's interest in the trust by creditors of the *cestui que trust*. *In re Keeler's Estate*, 334 Pa. 225, 229, 3 A.2d 413, 415 (1939); *Wilson v. U.S.A.*, 372 F.2d 232, 234 (3d Cir. 1967).

The validity of a spendthrift trust is based on the principle *cujus est dare, ejus est disponere* ("He whose it is, it is his to dispose of"). An owner of property may establish a trust for some **other** person so as to give that other person the enjoyment and beneficial ownership of the property, while protecting the trust property from levy or attachment by creditors of that other person. *C.I.T. Corp. v. Flint*, 333 Pa.. 350, 355, 5 A.2d 126, 127-28 (1939).

Things are different, however, where the creator of the trust and the designated beneficiary and equitable owner of the trust *res* are one and the same. It is against public policy for a person to establish a trust in which that same person retains the beneficial interest in the trust *res* while placing the *res* beyond the reach of that person's creditors. *In re Mogridge's Estate*, 342 Pa. 308, 311, 20 A.2d 307 (1941). A provision barring a creditor from reaching the interest of the settlor-*cestui que trust* is *not* enforceable under the common law of Pennsylvania. *Morton v. Morton,* 394 Pa. 402, 404, 147 A.2d 150, 151-52 (1950).

It is not disputed in these cases that the settlor of the DCP trust accounts and the beneficiaries thereof are one and the same. The funds comprising the interest of each debtor in this case in their DCP accounts were voluntarily withheld from that debtor's payroll. At the same time, each debtor also designated himself or herself as the *cestui que trust* of the trust accounts.

The chapter 7 trustee would have us conclude in light of this that the restrictions placed on the transfer of each debtor's interest in his or her DCP trust account as set forth in § 4521.2(h)(4), which unquestionably qualifies as "applicable nonbankruptcy law" for

- 10 -

purposes of § 541(c)(2) of the Bankruptcy Code, are not enforceable. Requirement (5) for § 541(c)(2) to apply to these cases, in other words, is not enforceable.

The chapter 7 trustee's argument does not end there. The chapter 7 trustee apparently would have us further conclude that because these restrictions on the transfer of the debtors' interests in their DCP accounts are not enforceable, the spendthrift trusts ostensibly established as a result of § 4521.2(h)(3) are not valid trusts. Requirement (1) for § 541(c)(2) to apply, in other words, also is not satisfied in these cases.

Were we dealing exclusively with the common law concerning spendthrift trusts where the settlor and a *cestui que trust* are one and the same individual, we would agree with the chapter 7 trustee. We are not, however, dealing with the common law, but instead with a *statutory* provision authorizing establishment of DCP trust accounts.

For the chapter 7 trustee to prevail in these cases, we would have to disregard § 4521.2(h)(3) or treat its words as mere surplusage. This we may not do. As was previously, § 4521.2(h)(3) "declares" a trust established by a Commonwealth employee who elects to participate in a DCP "to be a spendthrift trust". In addition, this provision provides that "construction of a participant's plan account as self-settled shall not cause the plan account to be treated as other than a spendthrift trust".

A court must presume when analyzing a duly-enacted statute that the General Assembly did *not* intend to perform a useless act. *Freundt v. Commonwealth of Pennsylvania, Department of Transportation*, 584 Pa. 283, 289, 883 A.2d 503, 506 (2005). When it enacts a statute, the General Assembly intends for the *entire* statute to be

effective and certain. 1 Pa. C.S.A. § 1922(2); *Rossi v. Commonwealth of Pennsylvania, Department of Transportation*, 580 Pa. 238, 243, 860 A.2d 64, 66 (2004).

The problems with this argument of the chapter 7 trustee do not end there.

It is a well-established principle in Pennsylvania that its jurisprudence is derived from the common law. Whenever possible, a statute should be interpreted in a manner that is consistent with existing common law. *Balkiewicz v. Asenavage*, 406 Pa. 501, 505-06, 178 A.2d 591, 594 (1962). Moreover, a statute cannot *by implication alone* be interpreted as abrogating existing common law. For the common law to be set aside, the legislature must affirmatively repeal or specifically pre-empt it. *Metropolitan Property and Liability Insurance Co. v. Insurance Commissioner of the Commonwealth of Pennsylvania*, 525 Pa. 306, 310, 580 A.2d 300, 302 (1990).

In previous cases their argument won the day and exposed the fatal flaw in the Commonwealth's employee plan and caused a contrary result. To cure this fatal flaw and allow creditors, some of which are Commonwealth residents, to lose the benefit of their largesse. The General Assembly in the decretal language employed in § 4521.2(h)(3) leaves little doubt that it *intended* to abrogate the common law rule concerning the invalidity of self-settled spendthrift trusts where a DCP trust account is involved.

Use of the word "declared" in § 4521.2(h)(3) indicates that an employee's DCP account is a spendthrift trust *by legislative fiat*. It qualifies as a spendthrift *because the General Assembly says so*. We have no doubt that the General Assembly has the power to issue such a *fiat*. By specifically providing that any construction of a DCP trust account as self-settled "shall not" cause the account to be treated as other than a spendthrift trust,

the General Assembly obviously had in mind the common-law principle that a self-settled trust is not valid and proscribed its application to DCP accounts established for Commonwealth officers and employees.

It should be noted that we have serious reservations concerning the wisdom of § 4521.2(h)(3). For one thing, it singles out Commonwealth officers and employees who participate in a DCP plan for special treatment to the detriment of their creditors. As it now stands, creditors of Commonwealth officers and employees who participate in a DCP may not pursue the assets in an officer's or employee's DCP account. Were the DCP account a "garden-variety" trust, creditors theoretically could pursue the trust *res* to satisfy such debts.

Such preferred treatment is not only detrimental to creditors of a DCP participant, in our estimation it also unfairly discriminates in favor of Commonwealth officers and employees who participate in a DCP established by the Commonwealth. Individuals who are not officers or employees of the Commonwealth of Pennsylvania but who also have DCP accounts established by private employers do not enjoy such protection from their creditors under the law of Pennsylvania.

While we think that the wisdom of § 4521.2(h)(3) is dubious at best, we have no alternative but to enforce it in these cases as a valid principle of the law of Pennsylvania. Because § 4521.2(h)(3) renders valid what otherwise would be an invalid spendthrift trust, we must reject the assertion by the chapter 7 trustee that requirement (5) of § 541(c)(2) of the Bankruptcy Code is not satisfied.

The above argument is not the only one put forth by the chapter 7 trustee. He asserts that the restrictions placed on the transfer of debtors' DCP accounts are not enforceable for yet another reason.

We previously held in an unpublished opinion issued in *In re Schoeneweis* (Adversary No. 99-2846) that statutory restrictions imposed on the transfer of the interest of the debtor therein, who also was a Commonwealth employee, in a DCP account were not enforceable for purposes of § 541(c)(2). Subsections 4521.2(h)(3) and (4), we concluded, amounted to a so-called "special law" and therefore violated Article 3, § 32 of the Pennsylvania Constitution. We held that these statutory provisions did not treat "like" persons in "like" situations in a "like" manner.

The chapter 7 trustee has drawn our attention to the reasoning employed in *In re Schoeneweis* and maintains that the reasoning set forth in that memorandum opinion applies with equal force to the present cases and reviewing new evidence offered here but not offered previously.

After revisiting the matter, we now conclude that subsections 4521.2(h)(3) and (4) are not "special" laws and do not violate Article 3, § 32 of Pennsylvania's constitution. Whereas the Commonwealth largely ignored and did not seriously respond in *Schoenweis* to the trustee's contention that §§ 4521.2(h(3) and (4) violate Article 3, § 32 of the Pennsylvania Constitution, it has seen fit this time to seriously address the contention in these cases and has briefed the matter. Now having the benefit of its input, we conclude that these statutory provisions are not constitutionally infirm.

Article 3, § 32 of the Pennsylvania Constitution provides as follows:

> The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law:
>> (1) Regulating the affairs of counties, cities, wards, boroughs or school districts;
>> (2) Vacating roads, town plats, streets or alleys;
>> (3) Locating or changing county seats, erecting new counties or changing county lines;
>> (4) Erecting new townships, changing township lines, borough limits or school districts;
>> (5) Remitting fines, penalties and forfeitures, or refunding moneys legally paid into the treasury;
>> (6) Exempting property from taxation;
>> (7) Regulating labor, trade, mining or manufacturing;
>> (8) Creating corporations, or amending, renewing or extending the charters thereof.
>
> Nor shall the General Assembly indirectly enact any special or local law by the partial repeal of a general law, but laws repealing local or special laws may be passed.

A strong presumption arises when a duly-enacted law is challenged on constitutional grounds that it is constitutional. *Curtis v. Kline*, 542 Pa. 249, 256 n.3, 666 A.2d 265, 268 n.3 (1995). One who challenges the constitutionally of such a law bears a "heavy" burden of persuasion. *Party of Pennsylvania v. Commonwealth of Pennsylvania*, 510 Pa. 158, 175, 507 A.2d 323, 331 (1984). A law will not be struck down "unless it clearly, palpably and plainly violates the Constitution". *Pennsylvania Liquor Board v. Spa Athletic Club*, 506 Pa. 364. 370, 485 A.2d 732, 735 (1984).

Article 3, § 32 was included in Pennsylvania's constitution to prevent the General Assembly from creating classifications granting privileges to one person, one company or one political subdivision of the Commonwealth. It was not, however, intended to prevent the General Assembly from creating any classifications at all that it deemed necessary to

meet diverse needs. *Wings Field Preservation Associates v. Commonwealth of Pennsylvania Department of Transportation*, 776 A.2d 311, 316 (Pa. Cmwlth. 2001).

The distinction between a "special" and a "general" law for purposes of Article 3, § 32 defies easy formulation. "Special" laws and "general" laws have been characterized as "opposites" of one another. *Heuchert v. State Harness Racing Commission*, 403 Pa. 440, 446-47, 170 A.2d 332, 336 (1961). Whereas a "special" law is not uniform in its application throughout the Commonwealth, a "general" law is. *Id*.

Legislation that applies to *every* member of a class, however, is "general" rather than "special". *Dufour v. Maize*, 358 Pa. 309, 313, 56 A.2d 675, 677 (1948). For instance, legislation applying to *all* cities or to *all* counties of the same class is "general" rather than "special". Legislation that applies to only *one* county of a class of which there are, say, *ten* members is "special". *Wings Field Preservation Associates*, 776 A.2d at 316.

Application of this distinction to the cases at issue here leads us to conclude that §§ 4521.2(h)(3) and (4) qualify as "general" rather than "special" legislation.

To begin with, Article 3, § 32 proscribes nine types or categories of "special" legislation. The chapter 7 trustee has not shown that §§ 4521.2(h)(3) and (4) lie within the scope of any of these categories.

Furthermore, even if the above categories set forth in Article 3, § 32 are not exhaustive or §§ 4521.2(h) and (4) should happen to lie within the scope of any of the nine specified categories, the chapter 7 trustee has not met his "exceptionally heavy burden" of proving that §§ 4521.2(h)(3) and (4) qualify as "special" legislation for purposes of Article 3, § 32 and for that reason are not constitutional.

The class of individuals to whom these statutory provisions apply is comprised of officers and employees of the Commonwealth of Pennsylvania. Moreover they apply to *every* member of that class. *Every* officer and *every* employee of the Commonwealth is eligible to participate in a DCP authorized by § 4521.2(a). See 72 Pa. C.S.A. § 4521.2(l).

Determining that §§ 4521.2(h)(3) and (4) apply to all Commonwealth officers and employees does not terminate our analysis. We also must determine whether that classification passes "constitutional muster".

The purpose and meaning of the Equal Protection Clause of the Federal Constitution and Article 3, § 32 of Pennsylvania's constitution are sufficiently similar to warrant like treatment. *Harrisburg School District v. Zogby*, 574 Pa. 121, 136, 828 A.2d 1079, 1088 (2003). Both embody the principle that "like" persons in "like" circumstances must be treated in a "like" manner. *Id.*

Neither of these constitutional provisions vitiates the power of the General Assembly to create classifications, which naturally flows from its inherent power to enact rules for the health, safety and welfare of the community. *Id.*, 574 Pa. at 137, 828 A.2d at 1088. Nor do they prohibit different treatment of persons having different needs, so long as the classification created is reasonable rather than arbitrary and bears a reasonable relationship to the object of the classification. *DeFazio v. Civil Service Commission of Allegheny County,* 562 Pa. 431, 436-37, 756 A.2d 1103, 1106 (2000).

A classification, though discriminatory, must be upheld if it bears a reasonable relationship to a legitimate state purpose. *Zogby*, 574 Pa. at 137, 828 A.2d at 1088-89. If a court concludes that a distinction is not arbitrary, the court may not declare the

classification to be void even though the court may be convinced that the classification does not rest on a sound basis. The test is not the General Assembly's wisdom in creating the classification, but its good faith. *Harrisburg School District v. Hickok*, 563 Pa. 391, 397, 761 A.2d 1132, 1136 (2000).

A classification is considered reasonable for purposes of Article 3, § 32 if any set of facts can be conceived to sustain it. If, however, it is based on arbitrary or irrelevant distinctions created to circumvent Article 3, § 32, the classification must be struck down. *Zogby*, 574 Pa. at 137, 828 A.2d at 1089.

A court is free when analyzing a classification in light of Article 3, § 32 to *hypothesize* reasons the General Assembly *might* have had for creating such a classification. *Id.*, 574 Pa. at 137-38, 828 A.2d at 1089.

Keeping the above principles in mind, we are constrained to conclude that §§ 4521.2(h)(3) and (4) pass "constitutional muster". The class of individuals to whom these subsections apply – i.e., all Commonwealth officers and employees who have chosen to participate in a DCP authorized by § 4521.2(a) – bears a reasonable relationship to a legitimate state purpose.

The objective of the classification appears to be to permit the Commonwealth's thousands of officers and employees to invest a portion of their earnings without paying federal income tax on the funds held back while ensuring that the fruits of the investment lie beyond the reach of that officer's or employee's creditors until the officer or employee receives a distribution from his or her DCP. Once distributed, they neither are free from federal taxation nor beyond the reach of the officer's or employee's creditors. While we

have grave misgivings about the wisdom of this, we must reluctantly conclude that the classification at issue in these cases bears a reasonable relationship to a legitimate state purpose.

We therefore conclude that the argument of the chapter 7 trustee that §§ 4521.2(h)(3) and (4) are not enforceable under applicable non-bankruptcy law is without merit. Subsections 4521.2(h)(3) and (4) qualify as enforceable restrictions on debtors' interests in a trust within the meaning of § 541(c)(2) of the Bankruptcy Code.

Appropriate orders shall issue.

/s/
BERNARD MARKOVITZ
U.S. Bankruptcy Judge

Dated: **October 30, 2006**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **BONNIE SUE TYKLA,** | : | Bankruptcy No. 02-29030 BM |
| **Debtor** | : | Chapter 7 |

*********************************

| | | |
|---|---|---|
| **JAMES R. WALSH, ESQUIRE, TRUSTEE OF THE BANKRUPTCY ESTATE OF BONNIE SUE TYKLA,** | : | |
| **Plaintiff** | : | |
| v. | : | Adversary No. 04-2430 BM |
| **COMMONWEALTH OF PENNSYLVANIA, STATE EMPLOYMENT RETIREMENT BOARD d/b/a STATE EMPLOYEES RETIREMENT SYSTEM,** | : | |
| **Defendant** | : | |

## ORDER OF COURT

**AND NOW**, this **30th** day of **October**, 2006, for reasons stated in the foregoing memorandum opinion, it hereby is **ORDERED**, **ADJUDGED** and **DECREED** that **JUDGMENT** be and hereby is entered **IN FAVOR OF** defendant Commonwealth of Pennsylvania State Employees Retirement System and **AGAINST** plaintiff James R. Walsh, chapter 7 trustee.

It is **SO ORDERED**.

/s/
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

cm: Parties In Interest